BRIGGS & LUCAS v. THE M. RUMELY COMPANY, Appellant.

**Warranty.** A warranty that a threshing machine will do as good work "as any other separator of its size in the United States" is a representation that it is reasonably fit to perform the work for which it was intended.

**BREACH: ESTOPPEL.** The giving of a note for the price of a threshing machine, after a trial of it in threshing one kind of grain, is not a settlement for it "after having tried it," within the meaning of a clause in the contract for its sale, providing that a settlement for it after having tried it, estops the purchaser from all claims for damages for breach of warranty.

**DAMAGES.** Freight paid by the purchaser of a threshing machine is recoverable as damages for a breach of warranty of the machine, where the freight was made a part of the purchase price, by the contract of sale.

**WAIVER.** A threshing machine company, by sending one of its agents to rectify defects in a machine sold by it, waives a provision in the contract of sale providing that failure to give notice to the company in writing, of a defect, bars any claim for breach of warranty.

**RETURN.** A provision in a contract for the sale of a threshing machine that it should be returned to the place where received, in case it failed to fulfill the warranty, is sufficiently complied

with by notice to the agent who sold it that the machine was in the town in which it was received, subject to his order, especially where the agent does not object to the place.

**Witnesses.** Code, section 3673, providing that witnesses living more than seventy miles from the place of holding court cannot be compelled to attend, does not prohibit the granting of the full mileage to a witness attending from a greater distance.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

THURSDAY, OCTOBER 24, 1895.

Action at law to recover for the breach of warranty of a threshing machine sold by the defendant to the plaintiffs. Trial by jury. Verdict and judgment for the plaintiffs. Defendant appeals.—*Affirmed.*

*Mills & Keeler* for appellant.

*W. F. Fitzgerald* and *Jamison & Burr* for appellees.

Rothrock, J.—I. The defendant manufactures threshing machines at La Porte, in the state of Indiana. On the twenty-ninth day of July, 1892, the plaintiff purchased a machine of defendant, from one of its agents, at Cedar Rapids, in this state. The contract was in the form of an order for the machine, and the price agreed to be paid was seven hundred and eight dollars, and the freight on the machine from La Porte to Estherville in this state. The part of the contract material to be considered in determining the case is as follows: "The undersigned hereby agrees to fully settle for the foregoing machinery before it is delivered to them, by paying said cash (if any) and giving said notes, and a mortgage on the said machinery, and also further approved security, as follows: "As a condition hereof, it is fully understood and agreed: (1) That this order is given subject to the

acceptance of M. Rumely Company, and that no prom-
ise, whether of agent, employe, or attorney, in respect
to the payments, security, or to the machinery named,
will be considered binding, unless made in writing and
ratified by the home office; and in case of delay in
shipment, the M. Rumely Company shall not be held
responsible for any loss or damage sustained by the
undersigned as a result of such delay. (2) That the
title to the said goods shall not pass until settlement
is concluded and accepted by the M. Rumely Com-
pany.    *    *    *    (4) The above separator is war-
ranted, with proper management, to do as good work,
in threshing and cleaning grain, as any other sep-
arator of its size in the United States, to be of good
material, and durable with proper care. (5) If said
machinery fails to comply with this warranty, notice
in writing of such failure must be given to M. Rumely
Company, La Porte, Indiana, and to their agent who
sold the machinery, within one week from the date of
starting said machinery, and upon receipt of such
notice, time allowed, opportunity and friendly assist-
ance given, to reach the machinery and remedy such
defects, if any; otherwise, the said warranty is waived,
and M. Rumely Company not responsible thereon.    If
the machinery cannot be made to fulfill the warranty,
it shall be returned free of charge by the purchasers
to the place where received, and money and notes (if
previously settled for) to the amount represented by
the above machinery shall be returned, and no further
claim be made on M. Rumely Company. Failure to give
such notice, or any use of such machinery after such
time has elapsed without such notice, shall be deemed
conclusive evidence that such machinery complies
with the warranty; or, if said machinery be settled
for, and notes given for the same after having tried
the same, then such failure, or such trial and settle-
ment, shall forever bar and estop the purchaser from

all claims for damages on account of a breach of such
warranty. Defects and failure in one part shall not
condemn any other part. No agent is authorized to
change the foregoing warranty, nor to give any other
or different warranty, either verbally or written.
Estherville P. O., Estherville Tp., Emmett Co.
[Signed] J. M. Briggs and J. W. Lucas, by J. M.
Briggs." The machine was shipped and arrived at
Estherville, and was unloaded by the plaintiffs on
Saturday, the twentieth day of August, 1892. On the
following Monday they set it up, and threshed fifty or
sixty bushels of barley, and quit work because of rain.
The next day was so wet that they could not continue
threshing. An agent of the defendant named Tucker
appeared at Estherville on Tuesday evening, and the
plaintiffs settled with him for the machine by giving
him three notes of two hundred and thirty-six dollars
each, with interest thereon from date at seven per
cent., and to become due in one, two, and three years
from the first day of December following. The notes
were secured by a chattel mortgage on the
machine. It is urged in behalf of defendant
that the court should have sustained a motion
to direct a verdict for the defendant, because the
plaintiffs waived the warranty by giving the notes
and settling for the machine after having given it a
trial. It is true that the contract provides that, if the
machine be settled for, and notes given therefor,
"after having tried the same," the trial and settlement
shall estop the purchaser from availing himself of a
breach of the warranty. The court correctly over-
ruled the motion for a directed verdict, because the
evidence did not show any such trial as was contem-
plated by the contract. The contract was not a war-
ranty that the machine would thresh barley only in
a proper manner. It was the right of the plaintiffs to
test the efficiency of it in all kinds of threshing. And

it is wholly immaterial what the agent stated to the plaintiffs to the effect that the settlement was not to be a waiver of the warranty. No act had been done by the plaintiffs which authorized court or jury to find that the warranty was waived by giving the notes and mortgage.

II. The warranty was an undertaking that the machine, with proper care and management, would do as good work in threshing and cleaning grain "as any other separator of its size in the United States." The evidence as to the failure of the machine to do good work was not in the way of comparison with other machines, but was directed to the general proposition that the work it performed was not well done. It is claimed that plaintiffs were not entitled to recover without showing what other machines would have done under the same conditions. We do not think any such a line of evidence was required.

The warranty, taken in its literal sense, was an undertaking that the machine was equal to any other in the whole United States. This was equivalent to a warranty that the machine was reasonably fit to perform the work for which it was intended.

III. The evidence shows that the machine did not work to the entire satisfaction of the plaintiffs at any time. But no complaint was made or notice given of its failure to thresh properly until the plaintiffs commenced to use it in threshing flax. And we may say here that the breach of warranty for which the action was brought is not founded on the complaint that it did not properly thresh wheat, oats, or barley, but that it would not thresh and clean flax. When the time arrived in the fall for threshing flax, and about the eighteenth day of September, the plaintiffs gave the machine the first trial on flax. They claim that it would not properly perform the work, and they made this complaint and gave notice thereof

to the general agent at Cedar Rapids immediately, and within the time named in the contract. They did not then give notice to the defendant at La Porte, Ind. It is earnestly contended that the failure to notify the defendant was a waiver of any claim under the warranty. On the other hand, it is claimed in behalf of the plaintiffs that the defendant, by its subsequent conduct, waived the right to insist that a notice should have been sent to it at La Porte.

The evidence shows that the defendant acted on the notice given to White, the general agent at Cedar Rapids. Two experts, named Davenport and Maxwell, were at different times sent to Estherville in response to the notice, to rectify the defects, if any, in the machine. Each one of these experts was present for several hours, while the machine was threshing flax. It appears that one of them was directed to go to Estherville by a telegram from the home office, and that he took a sample of the flaxseed from the machine to La Porte when he returned there. It appears to us that the acts of the defendant ought to be held to be a waiver of the service of a notice upon its officers at La Porte. The object of the notice was to give time and opportunity to make the machine fulfill the warranty. Its acts were not different from what they would have been if the notice had been served at La Porte within the time named in the contract. The case differs in its facts from *Fahey v. Machine Co.* 55 N. W. Rep. (North Dakota) 580, where it was held, under a somewhat similar contract, that under the evidence there was no waiver of the failure to give notice to the principal as well as the agent. In the case at bar the defendant acted upon the notice, and ought not now to be allowed to raise the question of want of notice. And the warranty had not been fully performed before any notice was given, as in *Wendall v. Osborne*, 63 Iowa, 99 (18 N. W. Rep. 709).

It appears to us that this is the material question in this appeal, and we have examined the authorities cited by counsel as to the rights of parties upon similar contracts, and have to say that we do not think any of them contain doctrine different from that we have adopted.

IV.   The evidence upon the question whether the machine complied with the warranty, and whether the efforts of the agents sent by the defendant to remedy the defects were successful, is in decided conflict, and the verdict of the jury upon these facts ought not to be disturbed.   After the agent last upon the ground went away, the plaintiffs hauled the machine to the house of Briggs, and stored it, and gave notice to the agent at Cedar Rapids that it was subject to his order.   As we understand the evidence, the agent was asked by one of the plaintiffs what plaintiff should do with it; and the agent gave no directions in regard to where to take it.   It is urged that the return was not made "to the place where received," as required by the contract.   It appears that the plaintiffs unloaded the machine from a railroad car.   There surely was no requirement that they should procure the use of a car and load it thereon.   The place where it was left, stored or deposited was within the incorporated limits of Estherville, or, as expressed by one of the witnesses, at "Briggs' place, in Estherville."   We think that under the evidence this was a sufficient compliance with that part of the contract. When the agent was asked what should be done with the machine and told that it was subject to his order, and where it was, if he wished to have it removed to some other part of the town, he should have so stated.

V.   It appears that the plaintiffs paid the freight on the machine, amounting to thirty-five dollars and fifty cents.   The court instructed the jury that, if the plaintiffs were entitled to recover, the sum paid as

freight should be included in the verdict. Complaint is made of this instruction. We think it was correct. If the plaintiffs had the right to rescind the contract, they were entitled to the return of the money paid and the notes, and the freight was paid as part of the price of the machine. Other objections are made to rulings of the court pending the trial, but we do not think they require separate consideration.

VI. A motion was made to retax costs in the district court. It appears that the plaintiffs subpoenaed five witnesses in Emmett county, that the witnesses obeyed the process, and the travel necessary to attend the trial was about two hundred miles. The clerk, in taxing the costs, included mileage for the whole distance traveled. The objection made by the motion to retax was that there is no legal authority for allowing mileage for more than seventy miles. The motion was overruled. It is provided by section 3673 of the Code, that witnesses in civil cases cannot be compelled to attend the district court out of the state where they are served, nor at a place more than seventy miles from the place of their residence. This statute is for the benefit of the witness. It is a denial of the right to require him to attend as a witness at a greater distance from his home than seventy miles. We think, in the absence of some showing that the extra travel was for the purpose of unnecessarily increasing the costs, that a witness may waive the exception, obey the process, and that his traveling fees should be taxed for the actual travel. The judgment of the district court is *affirmed.*