COLUMBIA CASUALTY COMPANY,
Appellant,

v.

CITY OF DES MOINES, Iowa, and
Des Moines Botanical Center,
Inc., Appellees.

No. 91–348.

Supreme Court of Iowa.

June 17, 1992.

Rehearing Denied July 29, 1992.

Jeffrey A. Boehlert and Ronald M. Rankin of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellant.

Bruce E. Bergman, City Solicitor, for appellee City of Des Moines.

Roger T. Stetson and Robert D. Sharp of Belin Harris Lamson McCormick, A Professional Corporation, Des Moines, for appellee Des Moines Botanical Center, Inc.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Appellant, Columbia Casualty Company, appeals a district court summary judgment order that denied Columbia reimbursement for a $300,000 contribution that it made toward a combined settlement package involving its insured, the City of Des Moines. The settlement package resolved claims brought by James B. Fister and his wife against the City of Des Moines and Des Moines Botanical Center, Inc., as codefendants arising from an accident that occurred during a tour at the Botanical Center. Columbia claims that it is entitled to a reimbursement of its $300,000 contribution because its insured, the City of Des Moines, did not sustain a loss in excess of the policy's "retained limit," which is essentially a $500,000 "deductible."

The district court disposed of this contention by way of summary judgment, concluding as a matter of law that Columbia had not demonstrated that it was entitled to a reimbursement of $300,000. We now reverse the grant of summary judgment entered in favor of the City and order that judgment be entered in favor of Columbia for $300,000. Our review of this matter is for errors at law. Iowa R.App.P. 4.

I. *Background Facts.*

Columbia issued an "excess insurance policy" to the City of Des Moines that promised to "indemnify the insured for ultimate net loss in excess of the retained limit [$500,000] which the insured shall become legally obligated to pay as damages." The term "ultimate net loss" is defined under the policy as "the sums for which the insured is legally liable as damages by reason of a judgment or a settlement made with the written consent of the claimant, the insured, and the company."

The Botanical Center is owned and operated by the City of Des Moines, not by Des Moines Botanical Center, Inc. Moreover, Des Moines Botanical Center, Inc. does not lease any part of the Botanical Center from the City. Botanical Center, Inc. is a non-

profit corporation that operates a volunteer tour guide service, adult education classes, and a gift shop on the premises of the Des Moines Botanical Center.

Under the terms of an endowment agreement with the City, Botanical Center, Inc. was required to "maintain tort liability insurance to protect the Des Moines Botanical Center, Inc., and its officers, agents, employees, and volunteers and the City of Des Moines (as an additional named insured) to the extent of $500,000 single limit." Pursuant to the endowment agreement, Botanical Center, Inc. purchased an insurance policy through the Maryland Casualty Insurance Company (hereinafter "Maryland"). The Maryland policy describes the business of the Botanical Center as "tour guide service" and describes the hazards insured as "volunteer tour guides rated as demonstrations in stores not owned or operated by the insured."

During the period that the policies were in effect, serious personal injuries were sustained by James Fister as a consequence of a fall at the Des Moines Botanical Center. Upon completion of an adult education course conducted by Botanical Center, Inc., Fister was directed by a Botanical Center, Inc. representative to leave the Botanical Center through an exit not normally used by patrons. The Botanical Center, Inc. representative indicated that she was acting on the instructions of the building's janitor, who was a City employee. As he exited the Botanical Center, Fister fell from an unguarded walkway into an empty reflecting pool, hit his head, and sustained permanent and disabling brain injuries. Fister and his wife then brought suit against the City and the Botanical Center, Inc.

The Fister lawsuit was ultimately settled by payments totaling $800,000. The City paid $500,000, and the remaining $300,000 was paid by Columbia on behalf of the City, under a reservation of rights. At or about the same time, Maryland paid $400,-000 to the City purportedly to settle a coverage dispute arising out of the Fister accident. In that dispute, the City maintained that it was covered by Maryland as an additional insured for the first $500,000 of its exposure in the Fister accident. In exchange for the payment of $400,000, the City executed a policy release to Maryland "in settlement and compromise of the dispute between themselves."

In marked contrast to the City's position, Columbia contends that the $400,000 Maryland payment was in actuality a settlement contribution made on behalf of Botanical Center, Inc. Stated differently, Columbia maintains that the Maryland payment, although channeled through City coffers, was made as a consequence of Botanical Center, Inc.'s coliability for the Fister settlement. Thus, Columbia argues, the City's "ultimate net loss," defined in the Columbia policy as "sums for which the [City] is legally liable as damages by reason ... of a settlement," is only $400,000. Given that the City's retained limit—*i.e.,* the City's deductible—was $500,000, the $300,000 contribution by Columbia would not have been required by the Columbia policy, and, thus, a reimbursement would be in order.

Accordingly, both Columbia and the City moved for summary judgment in their favor. Columbia seeks a return of the $300,-000, claiming that the City has not satisfied its deductible, and the City seeks judgment against Columbia on the ground that it is free to satisfy its retained limit by way of insurance with a third party, namely Maryland.

## II. *Columbia's Claim Against the City of Des Moines.*

In reviewing a grant of summary judgment, "the question is whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Iowa Nat'l Mut. Ins. Co. v. Granneman,* 438 N.W.2d 840, 842 (Iowa 1989); Iowa R.Civ.P. 237(c). As noted above, Columbia and the City have framed the decisive issue as being whether the $400,000 Maryland payment was disbursed in resolution of a coverage claim by the City, Botanical Center, Inc., or possibly some combination thereof. We, however,

conclude that Columbia's liability under the excess policy can be determined without deciding the basis for Maryland's $400,000 payment.

Since Columbia's liability, if any, to the City turns on the City's legal liability arising out of the Fister settlement, we need only consider the facts surrounding the settlement itself to determine Columbia's exposure. Having done so, it is clear that Botanical Center, Inc., through its attorney, offered to settle the Fister litigation for $400,000; it is equally clear that the Fisters then accepted this offer by executing a release as requested in favor of Botanical Center, Inc.

Kent Forney, the attorney retained by Maryland to represent Botanical Center, Inc. in the Fister matter, testified as follows:

Question: As far as you were concerned, was the money that was paid by the Maryland Casualty paid for and on behalf of the Des Moines Botanical Center, Inc. in the settlement?

Answer: ... I know I represented the Botanical Center and that the $400,000 I offered on behalf of the Botanical Center.

....

Question: And you were offering that money on behalf of your client, Des Moines Botanical Center, Inc., to obtain a complete release; correct?

Answer: Yeah....

This testimony was not controverted by the City; instead, the City's attorney for the Fister matter merely made the general assertion that "the $800,000 settlement was not a joint settlement."

The Fisters responded to Forney's offer by executing a release on March 5, 1983, in favor of both Botanical Center, Inc. and the City, thus creating a unilateral contract. *Siebring Mfg. Co. v. Carlson Hybrid Corn Co.*, 246 Iowa 923, 930, 70 N.W.2d 149, 153 (1955) ("acceptance may be shown by conduct or by performance communicated to the promisor"). Upon execution of the release, Botanical Center, Inc. became legally liable to the Fisters in the amount of $400,-000. *Renner v. Model Laundry, Cleaning & Dyeing Co.*, 191 Iowa 1288, 1304–06, 184 N.W. 611, 618 (1921) (a covenant not to sue is sufficient consideration to support a payment or promise to the covenantor by covenantee).

Therefore, the City's liability arising as a consequence of the Fister settlement would be the balance of the $800,000 settlement, or $400,000. It should be noted that an equal apportionment of fault between the City and Botanical Center, Inc. would be consistent with the then-applicable law regarding fault apportionment between co-tortfeasors. *Schnebly v. Baker*, 217 N.W.2d 708, 731 (Iowa 1974) ("ordinarily the total amount of the judgment is divided equally among those liable to the injured person"); L. Blades & A. Kintzinger, *Iowa Tort Guide* § 10.8, at 186–87 (1981) ("[T]ypically, where contribution is awarded, the total amount of the liability is divided equally among the tortfeasors."). It is apparent from the foregoing that the fact that the $800,000 payment to the Fisters was made by a check from the City is immaterial to our inquiry. The fact remains that the amount for which the City was "legally liable as damages by reason of ... a settlement" does not exceed $500,-000, the City's retained limit under the Columbia excess liability policy.

Our conclusion that the City's liability under the Fister settlement equals $400,-000 is bolstered by other uncontroverted evidence. In Columbia's petition, it alleged that the Fister accident arose "under circumstances creating joint and several legal liability on the part of [Botanical Center, Inc.] and the City of Des Moines." After initially admitting this paragraph of Columbia's petition, the City and Botanical Center, Inc. moved for leave to amend and substitute a new answer. The district court granted them leave to amend, and they then denied that the injuries sustained by Fister occurred under circumstances creating joint and several legal liability.

Regarding amended answers, we have said as follows:

When a pleading is amended or withdrawn, the superseded portion disappears from the record as a judicial admis-

sion limiting the issues and putting certain facts beyond dispute. Nevertheless, it exists as an utterance once deliberately made and may be used as a quasi-admission like any other utterance of the party as an item of evidence, not final or conclusive. *Clubb v. Osborn,* 260 Iowa 223, 227, 149 N.W.2d 318, 320 (1967); *see also Poyzer v. McGraw,* 360 N.W.2d 748, 750 (Iowa 1985). As noted above, if the City and Botanical Center, Inc. consider themselves to be jointly and severally liable to the Fisters, each of the codefendants, under then-existing law, would have been responsible for fifty percent of the settlement package. *Schnebly,* 217 N.W.2d at 731. Thus, the withdrawn admission does provide additional support for Columbia's contention that the City's "ultimate net loss" by reason of the settlement was only $400,000, and not the full $800,000 as the City contends.

We also find it significant that there is evidence in the record to suggest that, under the Maryland policy, Maryland's liability to the City was to be triggered only when there was also liability to Botanical Center, Inc. The coverage provisions of the Maryland policy that bear on the City's coverage as "additional insured" read as follows:

> The "Persons Insured" provision is amended to include as an insured the person or organization named above (hereinafter called "additional insured"), but only with respect to liability arising out of (1) operations performed for the additional insured by the named insured at the location designated above or (2) acts or omissions of the additional insured in connection with his general supervision of such operations.

Robert Elmitt, the insurance agent who procured both the Maryland and the Columbia policies, testified that "coverage for the City of Des Moines [under the Maryland policy] was contingent upon the liability relating to the operations of the Des Moines Botanical Center, Inc., not the City operation of the Botanical Center." In addition, the $400,000 Maryland check, which was made payable to the City of Des Moines, listed the Des Moines Botanical Center, Inc. as the "insured." The foregoing uncontroverted facts support our conclusion that Botanical Center, Inc. shared some liability for the Fister accident and thus contributed to the Fister settlement package.

### III. *Disposition.*

We conclude that Columbia is entitled to judgment for $300,000 against the City as a matter of law. We should note that Columbia has also appealed a summary judgment order rendered against them with respect to a claim they have lodged against Botanical Center, Inc. This claim was based on a subrogation clause in the Columbia policy that gave the insurer certain rights "to the extent of any payments" made by Columbia under the policy. Since our decision reduces to zero the amount Columbia has paid under the policy, the subrogation claim is no longer tenable. Columbia concedes as much in their brief, and we, therefore, need not address this issue any further on appeal. Accordingly, the judgment of the district court is reversed in part and remanded for further proceedings consistent with this opinion.

REVERSED IN PART AND REMANDED.